HUBERT and others v. RECKNAGEL and others.

(District Court, S. D. New York. August 26, 1882.)

1. CHARTER-PARTY—SEAWORTHINESS.

   Under the usual covenants of a charter-party that the vessel is "tight, stanch, and strong," the owners are answerable for *latent* as well as visible defects whereby the cargo is damaged.

2. SAME—LATENT DEFECTS—DAMAGE TO CARGO.

   Where a cargo of coffee was damaged through a leak in the deck of a brig 13 years old on a voyage from Rio, and the evidence showed a "middling passage," with rough seas, but no extraordinary perils for the season, and the vessel on arrival exhibited no signs of general strain, or any material loss of spars or sails, and probable causes of imperfection in the deck appearing, the leakage should be ascribed to the latter causes, and the owners held answerable for the damage, notwithstanding general evidence of thorough repair at the port of departure.

In Admiralty.

This libel was filed to recover $1,274 freight alleged to be due under a contract of affreightment for the carriage of 5,000 bags of coffee on the brig Magnet from Rio de Janeiro to New York. The answer alleged damage by water to 839 bags of coffee, to the amount of $1,300, through the unseaworthiness of the vessel in not being tight, stanch, and strong, as warranted by the charter.

*Hill, Wing & Shoudy,* for libelants.

*Blatchford, Seward, Griswold & Da Costa,* and *S. A. Blatchford,* for respondents.

BROWN, D. J. The evidence shows clearly that the damage to the coffee came from leakage through the deck; and the only question is whether this leakage arose from extraordinary perils of the sea after leaving Rio, or from a defective condition of the deck at the time of her departure. The Magnet was a single-decked brig of 283 tons, built in Germany in 1867. In January and February, 1879, she was thoroughly overhauled and repaired at Hamburg, and received a first-class certificate (33 A 11) for six years. It does not appear that her deck was renewed. On her voyage from Liverpool to Rio, immediately preceding the present charter, she met with very heavy weather, during which her maintop-mast was broken off, carrying away all her main yards, and the royal yard in its fall injured the deck. At Rio she was undergoing repairs for six weeks, and her decks were there repaired and recaulked throughout. She sailed from Rio on the fourteenth of December, 1879, and arrived at Hampton Roads on January 30, 1880, where she awaited orders, and thence proceeded

to New York, where she arrived February 28th. By her "protest," dated March 17th, it appears that she encountered heavy seas soon after leaving Rio, and continued to do so during much of her passage, taking in much water upon deck; that she met a "heavy gale" on the night of December 14th, which abated on the 16th, and another "gale with rain squalls" on the 29th of December; another on January 9th; and a hurricane on January 26th, in which two of her top-sails were split. On January 4th the boatswain went below, through the booby hatch, and found some of the seams slack and leaking on the port side near the main hatch. On the seventh of January he found additional leaks on the port side, and some on the starboard side not far from the mainmast. On deck, the source of the leak on the port side could not be discovered; but on the starboard side a split in one of the deck planks was found, which was repaired by the insertion of a "graving piece." The protest also describes the brig as "rolling and pitching terribly" in the heavy seas, and as "strained badly;" and the captain and mate testify to the passage being as severe as the previous one from Liverpool. The libelant relies upon this evidence, and the evidence of the thorough repair and caulking at Rio, as sufficient to show that the leakage was caused solely by the extraordinary perils of the voyage, and that the vessel was seaworthy when she sailed; that the leaks in the deck arose from the extraordinary strain in the rolling and pitching of the vessel, and the split in the deck plank from the leverage and pressure of the mainmast under the same extraordinary strain.

Having covenanted by the terms of the charter that the brig should be "tight, stanch, and strong," the libelants virtually warrrnted her fit to encounter all the ordinary perils of the voyage without damage to the particular cargo contracted for. The leak having occurred through the deck, the burden of proof is upon the libelants to show that the deck, when the brig sailed, was fit to withstand all the ordinary hazards of the vogage at that season, and that it was free from all latent as well as visible defects. *Wilson* v. *Griswold,* 9 Blatchf. 267; *Werk* v. *Leathers,* 97 U. S. 379; *Kepitoff* v. *Wilson,* L. R. 1 Q. B. D. 377, 380; *The Vesta,* 6 Fed. Rep. 532.

The split in the deck plank on the starboard side was, in my judgment, a latent defect in the deck existing when the brig sailed. It is difficult to believe that it was caused by any extraordinary leverage of the mainmast, for all the gales encountered were from the east; and, as the vessel was coming north, the pressure of the main-

mast must have been against the port side of the deck, and not upon the starboard side. The mate, moreover, ascribes it to the caulking at Rio, though not discoverable at that time and only developed afterwards. The leak from this defect was discovered on the seventh of January, when the voyage was about half completed

Nor am I satisfied, from the whole evidence taken together, that the vessel encountered any such extraordinary seas or weather as should exempt her from responsibility, and throw the loss upon the freighters or insurers. The first leak was discovered January 4th, and the other January 7th, by which the coffee was already somewhat damaged. Up to that time two easterly gales had been encountered; but there is no evidence that either of them was of an unusual or extraordinary character; they were of brief duration, and the brig went through them without the loss of a sail or spar. In the hurricane, 10 days later, two of her top-sails were split; but on her arrival at New York, upon careful inspection by several experts, her hull was found to be in excellent condition; no signs of general strain were visible; none of the butts or water-way seams had started, and two days' work sufficed for all the repairs thought necessary. The passage was not a long one, and there is no satisfactory evidence that it was more severe and trying than was naturally to be expected at that season. The mate testified that she made a "middling passage," and all the ordinary and substantial indications from the brig herself are wanting to show that the voyage was one of any unusual or extraordinary severity. *Barnewall* v. *Church*, 1 Caines, 217, 247. The evidence also sufficiently indicates the probable causes of the leaks, viz., the age of the deck, and its several repairs; the gradual widening of the seams from repeated caulking; the shrinkage in the hot sun preceding the thorough, and perhaps excessive, caulking at Rio, and the subsequent expansion when wet; the split in the plank attending the last caulking; and the subsequent warping of the deck plank, and, in some places, their springing, from the beams. These are risks which belong to the ship and not to the freighters.

I must, therefore, hold the vessel answerable for the damage to the cargo, and a reference should be taken to ascertain the amount thereof, to be offset against the amount due to the libelants under the charter.